Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| ARIELLE SAMUEL, individually and on behalf of all others similarly situated, | Case No. 6:26-cv-00274 |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT |
| TRUE RELIGION APPAREL, INC. and TRUE RELIGION SALES, LLC, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## Table of Contents

I.  Summary of the case. .................................................................................................1

II.  Parties. .....................................................................................................................2

III.  Jurisdiction and Venue. ............................................................................................2

IV.  Facts. .......................................................................................................................3

    A.  Defendants' fake sales and discounts. .............................................................3

    B.  Defendants' purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendants' advertisement of the purported discounts. ...........................................................................................13

    C.  Defendants' advertisements harm consumers ..................................................16

    D.  Plaintiff was misled by Defendants' misrepresentations. .................................18

V.  Class Action Allegations ..........................................................................................21

VI.  Claims .....................................................................................................................23

    Count 1: Oregon Unlawful Trade Practices Act (UTPA) .....................................23

    Count 2: Breach of Contract ................................................................................25

    Count 3: Breach of Express Warranty ..................................................................26

    Count 4: Quasi-Contract/Unjust Enrichment .......................................................27

    Count 5: Negligent Misrepresentation ..................................................................27

    Count 6: Intentional Misrepresentation .................................................................28

VII.  Relief. ...................................................................................................................29

VIII.  Jury Demand. .......................................................................................................30

I.     **Summary of the case.**

1.     When a product is advertised as being on sale, this drives purchases. There is nothing wrong with a legitimate sale. But some companies take advantage of consumers with fake sales: deceptive sales that aren't really discounts off the true regular price. To protect consumers, the law prohibits such deceptive sales.

2.     Defendant True Religion Apparel, Inc. and Defendant True Religion Sales, LLC ("Defendants" or "True Religion") manufacture, market, and sell clothing and accessories ("True Religion Products" or "Products"). On its website, True Religion lists purported regular prices and advertises purported limited-time sales offering steep discounts from those listed regular prices. Defendants almost always promote percentages off with a constant stream of promotions.

3.     Far from being time-limited, the discounts on True Religion Products are almost always available. As a result, everything about True Religion's price and purported discount advertising is false. The list prices True Religion advertises are not actually its regular prices, because True Religion's Products are regularly available for less than that. The purported discounts True Religion advertises are not the true discounts the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited in time—quite the opposite, they are consistently available.

4.     As described in greater detail below, after reviewing True Religion's website, www.truereligion.com, and seeing and relying on advertised sales, Oregon consumer Ms. Samuel ("Plaintiff") bought Products from True Religion's website, www.truereligion.com. When Plaintiff made her purchase, True Religion advertised that a purported sale was going on, and Plaintiff believed that she was being offered steep discounts from the purported regular prices that True Religion advertised. And based on True Religion's representations, Plaintiff believed she was purchasing Products whose regular prices and market values were the purported list prices that True

Religion advertised, that she was receiving substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendants.

5.    The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendants advertised were not the true regular prices at which Defendants usually sell the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendants been truthful, Plaintiff and other consumers like her would not have purchased the Products, or would have paid less for them.

6.    Plaintiff brings this case for herself and other consumers who purchased True Religion Products from Defendants.

## II.    Parties.

7.    Plaintiff Arielle Samuel is domiciled in Bend, Oregon.

8.    The proposed Class includes citizens of Oregon.

9.    Defendant True Religion Apparel, Inc. is a Delaware corporation with its principal place of business in Gardena, California. It is a citizen of Delaware and California. Defendant True Religion Sales, LLC is a Delaware limited liability company with its principal place of business in Gardena, California. It is a citizen of Delaware and California. *See* 28 U.S.C. § 1332(d)(10) (in a class action "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

## III.    Jurisdiction and Venue.

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendants.

11.    The Court has personal jurisdiction over Defendants because Defendants sold True

Religion Products to consumers in Oregon, including to Plaintiff.

12.    Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendants are subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold True Religion Products to consumers in Oregon and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sale to Plaintiff.

## IV.    Facts.

### A.    Defendants' fake sales and discounts.

13.    Defendants manufacture, distribute, market, and sell clothing and accessories. True Religion sells its Products directly to consumers, including through its website, www.truereligion.com.

14.    On its website, True Religion creates the false impression that its Products' regular prices are higher than they truly are.

15.    On its website, True Religion advertises steep discounts on its Products. These discounts consistently offer "up to X%" off the listed regular prices that Defendants advertise. True Religion also touts that its discounts are "Limited Time Only" or limited to specific time periods (such as Memorial Day). And it advertises these discounts extensively: including on attention-grabbing banners at the top of its homepage. Here are some of the banners that True Religion includes on its webpage:



16.     And here are some of the advertisements appearing beneath the banners on

Defendants' homepage:



*Captured October 19, 2022[1]*



*Captured August 29, 2025*

---

[1] From the Internet Archive, https://archive.org/about/.



*Captured July 1, 2023*

17.     Defendants represent that these discounts will only be available for a limited time, but in reality, the discounted pricing continues indefinitely. For example, in early December 2023, Defendants represented that they were offering a sitewide "Up to 70% OFF" discount as part of their "Holiday Sale":



*Captured December 6, 2023*

18.     To reasonable consumers, this means that shortly after the holidays, Defendants' Products will no longer be on sale and will retail at their purported regular price. But Defendants'

discount pricing does not end, and their purported regular prices do not return. Instead, Defendants keep offering the discount pricing and simply change the name of the sale. For example, at the end of December, Defendants replaced the "Holiday Sale" with their "Semi Annual Sale," but the discounting remained:



*Captured December 30, 2023, and again on January 15, 2024*

19.     Similarly, after the "Semi Annual Sale," Defendants' Products did not return to their regular list prices. Instead, they were still available at a discount, as part of the new replacement promotion: the "Presidents' Day Sale" that also was purportedly offered for a "Limited Time Only":



*Captured February 20, 2024*

20.     Again, to reasonable consumers, this means that shortly after Presidents' Day, Defendants' Products will no longer be on sale and will retail at their purported regular prices. But that is not how Defendants operate. Instead, after enough time had passed beyond "Presidents' Day," Defendants stopped referring to the sales as a "Presidents' Day" sale but continued offering

the same sitewide discounting:



*Captured March 31, 2024*

21.    Using these tactics, Defendants lead reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the promotion. In other words, they lead reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

22.    To confirm that Defendants consistently offer discounts off purported regular prices that are applied to all orders, Plaintiff's counsel performed an investigation of Defendants' advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org) and screen captures from the www.truereligion.com website. That investigation confirms that Defendants' sales have persisted continuously. For example, the investigation sampled 81 screenshots of Defendants' website from those available on the Wayback machine dating back to November 2021. Of the 81 screenshots, 74 (i.e., 91.4%) displayed a purportedly time-limited discount on Defendants' Products. In addition, for a period of time beginning in August 2025, the investigation captured screenshots on an almost daily basis directly from the www.truereligion.com website. Screenshots were captured for 66 days. Of these, all 66 (i.e., 100%) screenshots displayed a purportedly time-limited discount on Defendants' Products.

23.    Defendants also list the discount prices for their Products alongside the listed regular prices appearing in strikethrough font. Example screenshots are provided on the following pages:



*Captured August 11, 2025[2]*

---

[2] The text appearing beneath each photo in this screenshot has been zoomed and overlaid for ease of viewing.



*Captured October 7, 2025*[3]

24.     Based on Defendants' advertisements, reasonable consumers reasonably believe that the prices displayed in "strikethrough font" (*e.g.*, "$184.00" for the Rocco Stacked Skinny Jean) are Defendants' regular prices and former prices (that is the price at which the goods were actually offered for sale on Defendants' website before the limited-time offer went into effect).

---

[3] The text appearing beneath each photo in this screenshot has been zoomed and overlaid for ease of viewing.



*Captured October 1, 2025*

25.    In other words, reasonable consumers reasonably believe that the listed strikethrough regular prices Defendants advertise represent the amount that consumers formerly had to pay on Defendants' website for Defendants' goods, before the limited-time sale began. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendants on their website had to pay the regular price to get the item and did not have the opportunity to get a discount from the regular price.

26.    In addition, Defendants' website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts throughout the purchasing process, including on the Product pages, the Shopping Bag pages, and the Checkout pages.

27.    Each Product-specific page lists the Product with a fake regular price (appearing in strikethrough font) next to the purported discount price. For example, on August 15, 2025, the Product page for the "Joey Low Rise Super T Flare Jean" listed a purported regular price of "$244.00" discounted "30% OFF" to "$170.80."



*Captured August 15, 2025*

28.     And, once a Product is selected, the Shopping Bag page repeats the same fake prices and fake discounts in substantially the same format. For example, after selecting the "Joey Low Rise Super T Flare Jean" for purchase on August 15, 2025, the Shopping Bag page appears like this:



*Captured August 15, 2025*

29.     And then the next step of the purchasing process, the Checkout page, also repeats the same fake prices and fake discounts in substantially the same format. For example:

*Captured August 15, 2025*

30.     But the truth is, the listed regular price (e.g., $244.00 for the "Joey Low Rise Super T Flare Jean") that appears on True Religion's website, including on its Product page, its Shopping Bag page, and its Checkout page, is not its regular price. Instead, the purported regular price is much lower, because Defendants almost always offer steep discounts on their Products. As a result, Defendants' customers did not receive the advertised discount (e.g., "30% Off"). They received a much lower discount, or no discount at all.

31.     Based on Defendants' advertisements reasonable consumers reasonably believe that the list prices Defendants advertise are Defendants' regular prices and former prices (that is the price at which the goods were actually offered for sale on Defendants' website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendants advertise represent the amount that consumers formerly had to pay on Defendants' website for Defendants' goods, before the sale began, and will again have to pay for Defendants' goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendants on their website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

32.     Reasonable consumers also reasonably believe that the list prices Defendants advertise represent the true market values of the Products, and are the prevailing prices for those

Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendants almost always offer discounts off the purported regular prices they advertise. As a result, everything about Defendants' price and purported discount advertising is false. The list prices Defendants advertise are not actually Defendants' regular or former prices, or the prevailing prices for the Products Defendants sell. And, the list prices do not represent the true market value for the Products, because Defendants' Products are consistently available for less than that on Defendants' website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendants advertise are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are regularly available.

B. **Defendants' purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendants' advertisement of the purported discounts.**

33. As explained above, Defendants sell True Religion Products through their website, www.truereligion.com. Some True Religion Products are also available through a small number of third-party websites and retailers, including Amazon, Tilly's, and Nordstrom Rack.

34. For those True Religion Products that are available from third-party retailers, these Products are consistently available for prices well below Defendants' listed regular prices. As an illustrative example, on November 12, 2025, True Religion advertised its "Becca Crystal Wing Bootcut Jean" on its website, with a discounted price of $92.00 and a regular list price of $184.00:



*Captured November 12, 2025*

35.    On the same day, the same Product was available on Amazon for $92.00, which mirrors the purported discount price on True Religion's website and is far less than the purported regular price Defendants were advertising on True Religion's website[4]:



*Captured November 12, 2025*

36.    Plus, a third-party Amazon price tracker, keepa.com, reveals that in the three months prior to November 12, 2025, the price of the Becca Crystal Wing Bootcut Jean on Amazon ranged between $110.00 and $55.00—nowhere near the purportedly regular price ($184) shown on Defendants' website:

---

[4] On the same day, the Product was also available at Tilly's for $103.20, which is far less than the purported regular price appearing on True Religion's website.



*Captured November 12, 2025*

37.    And Google Shopping data (which shows the "typical" price for products over the prior three months based on stores across the Internet) shows that the same Product is typically sold by retailers across the web in the range of "$90 to $129," which again is far less than Defendants' advertised regular price of $184.00:



*Captured November 12, 2025*

38.    In short, consistent with the illustrative example above, True Religion's Products are

regularly available from third-party websites and sellers for less than the purported regular prices that True Religion's website advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers typically converge on True Religion's price, especially since the Products are sold in an e-commerce market and True Religion, the manufacturer, sells the Products directly to consumers through its publicly available website.

39.     Moreover, regardless of third-party websites' and retailers' prices, True Religion Products are primarily sold through True Religion's branded website, www.truereligion.com. If consumers are searching for a True Religion Product, they will go to True Religion's website. For example, if a consumer Googles "True Religion Jeans," the first sponsored and unsponsored results lead to www.truereligion.com. So, because the True Religion Products are most commonly sold on True Religion's website, they are most commonly sold for the discounted prices available on True Religion's website.

40.     Moreover, as discussed above, True Religion Products are regularly available on Amazon—one of the world's largest retailers of customer goods—for far lower prices than Defendants' listed regular prices. Thus, between sales on Defendants' website and Amazon, the Products routinely and predominantly sell for prices below Defendants' purported regular prices, and the listed regular prices are not the prevailing market rates.

**C.    Defendants' advertisements harm consumers.**

41.     Based on Defendants' advertisements, reasonable consumers expect that the list prices Defendants advertise are the regular prices at which Defendants usually sell their Products, that these are former prices that Defendants sold the True Religion Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

42.     Reasonable consumers expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive

the advertised discount from the regular purchase price.

43.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

44.    Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[5] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[6]

45.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[7]

46.    Thus, Defendants' false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendants' advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendants' advertisements artificially increase consumer demand for Defendants' Products. This puts upward pressure on the prices that Defendants can charge for their Products. As a result, Defendants can charge a price premium for their Products that they would not be able to charge absent the misrepresentations described above. So, due to Defendants' misrepresentations, Plaintiff and the

---

[5] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[6] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[7] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Class paid more for the Products they bought than they otherwise would have.

**D.    Plaintiff was misled by Defendants' misrepresentations.**

47.    On or around May 27, 2025, Ms. Samuel purchased Mikey Big T jeans and an All-Over Print Belt from Defendants' website, www.truereligion.com. She made this purchase while living in Bend, Oregon. At the time Ms. Samuel made her purchase, she recalls that Defendants were offering a heavy discount off of the purported regular price on the items she purchased (at least 40%, if not more). Before tax and shipping, Ms. Samuel paid the purported discount price of $100.32 for the jeans and $19.98 for the belt.

48.    When Ms. Samuel purchased the Mikey Big T jeans and an All-Over Print Belt on May 27, 2025, the advertised discount was presented in substantially the same manner described above. The particular versions of Mikey Big T Jeans and an All-Over Print Belt that Ms. Samuel purchased are not currently available on the True Religion website or from the Internet Archive. And True Religion has unique possession of its historical website list pricing for these versions. Today, however, True Religion still advertises substantially similar items in substantially the same manner: listing a regular price, or strikethrough price, for a Mikey Big T jeans as "$204.00" alongside a discounted price of "$102.00;" and listing a regular price, or strikethrough price, for an All-Over Print belt as "$64.00" alongside a discounted price of $38.40. Based on her memory and these facts, True Religion's discounts for the exact versions of Plaintiff's Products were substantially similar (at least 40% off, if not more).

 

*Captured January 13, 2026*

49.    Based on Defendants' representations described above, Plaintiff reasonably understood that Defendants usually (and formerly, before the promotion Defendants were advertising) sold the Products she was purchasing at the published regular prices (shown in strikethrough font), that these regular prices were the prevailing price and market value of the Products that she was buying, that she was receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited-time promotion), and that the Products would go back to retailing for the published regular prices when the promotion ended. She would not have made the purchases if she had known that the Products were not discounted as advertised, and that she would not be receiving the advertised discounts.

50.    In reality, as explained above, True Religion's Products, including the Products that Plaintiff purchased, are regularly available at a discount from the purported regular prices. In other words, Defendants did not regularly sell the Products that Plaintiff purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendants' Products are regularly on sale.

Class Action Complaint                          19                          Case No. 6:26-cv-00274

51.     As explained above, reasonable consumers are not fake discount detectives and do not monitor sales to see if they are permanent.

52.     Plaintiff faces an imminent threat of future harm. She would purchase additional Products in the future if she could feel sure that Defendants' regular prices accurately reflected Defendants' former prices and the market value of the Products, and that their discounts were truthful. But without an injunction ordering Defendants to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendants' sales or supposed regular prices in the future, and so cannot purchase Products she would otherwise like to purchase.

**E.     Defendants breached their contracts with and warranties with Plaintiff.**

53.     When Plaintiff and other members of the putative Class purchased True Religion Products, they accepted offers that Defendants made. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

54.     Defendants' website and email receipts list the regular price (the market value) of the items that Defendants promised to provide. Defendants agreed to provide a discount equal to the difference between the regular prices and the prices paid by Plaintiff and putative Class members. These were specific and material terms of the contract. These promises were also express warranties: affirmations of fact about the Products and a promise relating to the goods.

55.     Plaintiff and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

56.     Defendants breached their contract by failing to provide Plaintiff and other members of the putative Class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the promised discounts. Defendants breached their express warranties for the same reasons.

F.    **No adequate remedy at law.**

57.    Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.

58.    In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendants' representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

59.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

60.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

## V.    Class Action Allegations.

61.    Plaintiff brings the asserted claims on behalf of the proposed Class of:

- Oregon Class: all Oregon residents who purchased discounted True Religion Products on Defendants' website.

62.    The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

63.     The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class members.

64.     Class members can be identified through Defendants' sales records and public notice.

### Predominance of Common Questions

65.     There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

> (1) whether Defendants' sales were persistent;
>
> (2) whether Defendants' advertised regular prices were really what they regularly charged;
>
> (3) whether Defendants' sales were misleading to reasonable consumers;
>
> (4) whether these sales violated consumer protection laws, breached Defendants' contract with proposed Class members, and violated their express warranties;
>
> (5) restitution or damages needed to compensate Plaintiff and the proposed Class.

### Typicality & Adequacy

66.     Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased True Religion Products advertised at a discount from Defendants. There are no conflicts of interest between Plaintiff and the proposed Class.

### Superiority

67.     A class action is superior to all other available methods for the fair and efficient

adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of small individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count 1: Oregon Unlawful Trade Practices Act (UTPA)
### (By Plaintiff and the Oregon Class)

68.    Plaintiff incorporates each and every factual allegation set forth above.

69.    Plaintiff brings this cause of action for herself and the Oregon Class.

70.    As alleged in detail above, Defendants make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." O.R.S. § 646.608(j).

71.    As alleged in detail above, Defendants also make "false or misleading representations of fact concerning the offering price of … goods or services." O.R.S. § 646.608(s).

72.    As alleged in detail above, Defendants also "advertise[] … goods … with intent not to provide the … goods … as advertised." O.R.S. § 646.608(i). Defendants advertise the Products as having a market value equal to the regular list price. And Defendants advertise substantial discounts off that price. But Defendants know that the regular price and discount are fake. That is, Defendants do not actually intend to offer a real discount off the true regular price.

73.    As alleged in detail above, Defendants also represent that their goods have characteristics that they do not in fact have. O.R.S. § 646.608(e). Defendants advertise that their Products have a value equal to the regular list price. And Defendants advertise substantial discounts off that price. But the Products do not really have the regular price value and there is not really a discount.

74.    As alleged in detail above, Defendants used false and misleading statements about the promotions (the regular prices and supposed sales) used to publicize their Products. O.R.S. § 646.608(p).

75.     The UTPA specifically prohibits sellers from using misleading price comparisons. O.R.S. § 646.608(ee) (incorporating O.R.S. §§ 646.883 and 646.885). Defendants' price comparisons are misleading in several ways.

76.     Under O.R.S. § 646.883, the UTPA prohibits sellers from including "a price comparison in an advertisement unless" "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." As alleged in detail above, Defendants use strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price. Defendants provide no such disclosures.

77.     Under O.R.S. § 646.885, the use of term "sale" is deemed to identify "the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885. As alleged in detail above, Defendants use the words "sale," "discount," and "___% Off," in their promotions, even when the Products are not truly offered at a discount as compared to the former prices.

78.     Defendants' unlawful methods, acts, and practices described above were "willful violations" of O.R.S. § 646.608 because Defendants knew or should have known that their conduct was a violation, as defined by O.R.S. § 646.605(10). Like any company, Defendants track their own sales transactions and know that their sales are permanent, that their regular prices are not what consumers are regularly paying, and that their discounts are not really discounts.

79.     As a direct, substantial, and proximate result of Defendants' conduct, Plaintiff and

subclass members suffered ascertainable losses and injury to business or property.

80.     Plaintiff and subclass members (a) would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were fake; (b) paid more than they otherwise would have paid, due to Defendants' deceptive prices and sales; and (c) received Products that were not, in fact, worth as much as Defendants represented them to be worth (the regular prices).

81.     Plaintiff seeks, on behalf of herself and the subclass: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs; and (5) an injunction. O.R.S. § 646.638(3); O.R.S. § 646.638(8).

## Count 2: Breach of Contract
### (By Plaintiff and the Oregon Class)

82.     Plaintiff incorporates each and every factual allegation set forth above.

83.     Plaintiff brings this cause of action for herself and the Oregon Class.

84.     Plaintiff and Class members entered into contracts with True Religion when they placed orders to purchase Products on Defendants' website.

85.     The contracts provided that Plaintiff and Class members would pay True Religion for the Products ordered.

86.     The contracts further required that True Religion provide Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the website and receipts, and to provide Plaintiff and Class members with the discount advertised on the website and listed in the receipt. These were specific and material terms of the contract.

87.     Plaintiff and Class members paid True Religion for the Products they ordered, and satisfied all other conditions of their contracts.

88.     True Religion breached the contracts with Plaintiff and Class members by failing to

provide Products that had a market value equal to the regular price displayed on its website, and by failing to provide the promised discount.

89.    As a direct and proximate result of Defendants' breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

90.    For the breach of contract claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendants' unlawful conduct.

## Count 3: Breach of Express Warranty
### (By Plaintiff and the Oregon Class)

91.    Plaintiff incorporates each and every factual allegation set forth above.

92.    Plaintiff brings this cause of action on behalf of herself and the Oregon Class.

93.    Defendants, as the manufacturer, marketer, distributor, supplier, and/or sellers of True Religion Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendants' website and that Plaintiff was receiving a discount off this value. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

94.    This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

95.    In fact, True Religion's Products' stated market value was not the market value. Thus, the warranty was breached.

96.    Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' office in Gardena, California and registered agent on January 12, 2026.

97.    Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have

purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

98.    For her breach of express warranty claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendants' unlawful conduct.

### Count 4: Quasi-Contract/Unjust Enrichment
### (By Plaintiff and the Oregon Class)

99.    Plaintiff incorporates the factual allegations in paragraphs 1-52 and 57-60. Plaintiff brings this cause of action in the alternative to her Breach of Contract claim. (In the alternative only), due to Defendants' misrepresentations, their contracts with Plaintiff and other Class members are void or voidable.

100.    Plaintiff brings this claim for herself and the Oregon Class.

101.    As alleged in detail above, Defendants' false and misleading advertising caused Plaintiff and the Class to purchase True Religion Products and to pay a price premium for these Products.

102.    In this way, Defendants received a direct and unjust benefit, at Plaintiff's expense.

### Count 5: Negligent Misrepresentation
### (By Plaintiff and the Oregon Class)

103.    Plaintiff incorporates each and every factual allegation set forth above.

104.    Plaintiff brings this cause of action on behalf of herself and the Oregon Class.

105.    As alleged in detail above, Defendants made false representations to Plaintiff and Class members concerning their regular prices and discounts.

106.    When Defendants made these misrepresentations, they should have known that they were false. Defendants had no reasonable grounds for believing that these representations were true

when made. Like any company, Defendants track their own sales and their own transactions. They know that their sales persist and that their advertised regular prices are not really what consumers regularly pay.

107.    Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

108.    In addition, Class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.

109.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

110.    Plaintiff and the Class were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

## Count 6: Intentional Misrepresentation
### (By Plaintiff and the Oregon Class)

111.    Plaintiff incorporates each and every factual allegation set forth above.

112.    Plaintiff brings this cause of action on behalf of herself and the Oregon Class.

113.    As alleged in detail above, Defendants made false representations to Plaintiff and Class members concerning their regular prices and discounts.

114.    When Defendants made these misrepresentations, they knew that the misrepresentations were false at the time that they made them or acted recklessly in making the misrepresentations. They know that their sales persist and that their advertised regular prices are not really what consumers regularly pay.

115.    Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

116.    In addition, Class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.

117.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

118.    Plaintiff and the Class were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

## VII.    Relief.

119.    Plaintiff seeks the following relief for herself and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed Class;

- Damages, statutory damages, treble damages, and punitive damages where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

• Any additional relief that the Court deems reasonable and just.

## VIII.  Jury Demand.

120.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: February 10, 2026                    Respectfully submitted,

By: _/s/ Jonas Jacobson_

Jonas B. Jacobson (OSB No. 231106)
jonas@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*